IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

LYLE L. CATTAU, an individual,)
and CATTZ, INC., a Nebraska   )
corporation,                  )
                              )
            Plaintiffs,        )          8:05CV247
                              )
        v.                    )
                              )
CURT MANUFACTURING, INC., a   )      MEMORANDUM AND ORDER
Wisconsin corporation,        )
                              )
            Defendant.         )
_____)

        This matter is before the Court on defendant's motion
for partial summary judgment (Filing No. 39).  Defendant seeks
partial summary judgment on plaintiff's claims for minimum
royalties of $70,000 and for future damages, including future
royalties, additional royalties, and lost opportunity.  Having
reviewed the motion, the parties' briefs and evidentiary
submissions, and the applicable law, the Court finds that
defendant's motion should be granted in part and denied in part.

**BACKGROUND**

        Plaintiff Lyle Cattau ("Cattau") is a Nebraska resident
and principal shareholder of plaintiff Cattz, Inc. ("Cattz"), a
Nebraska corporation, with its principal place of business in
Columbus, Nebraska.  Defendant Curt Manufacturing, Inc. ("Curt")
is a Wisconsin corporation with its principal place of business
in Eau Claire, Wisconsin.  Plaintiff Cattau owns patents for a
fifth-wheel slide assembly (U.S. Patent No. 5,449.191), a sliding

hitch (U.S. Patent No. 5,772,229), and a lock mechanism for a
fifth-wheel hitch (U.S. Patent No. 5,839.74) (collectively the
"patented products" or the "licensed products").  Cattz is
licensed to sell Cattau's patented products and is also the owner
of U.S. Trademark No. 2,025,830, which relates to Cattau's
inventions.

On August 14, 2000, plaintiffs Cattau and Cattz
(collectively Cattz), entered into a licensing agreement ("the
Agreement") with Curt, granting Curt a license to manufacture and
sell Cattz's patented products.  Under the terms of this
Agreement, Curt agreed to "use its best efforts to promote and
sell the licensed products and . . . sell, and pay royalties to
. . ." Cattz (Filing No. 59 Ex. 1, ¶ 3C).  Paragraphs 4 and 5 of
the Agreement further provided that "Curt shall pay Cattz a
royalty of six percent of all net sales of all licensed products
sold by or for Curt during the term of th[e] agreement . . ."
and that such royalties were to be paid "[n]o later than the last
day of January, April, July, and October of each year of th[e]
agreement." (*Id*. at ¶¶ 4-5).  The provision of the Agreement at
issue for purposes of Curt's motion for partial summary judgment
is paragraph 7.

Paragraph 7 of the Agreement provides, in relevant
part:

                    Unless terminated early as provided
                    below, the term of this agreement

-2-

shall be for the life of the last
to expire licensed patents from and
after the date of execution by all
parties.  The exclusive license,
subject to the license of Cattz, to
manufacture and sell the licensed
product shall continue subject to
compliance with the minimal
conditions set forth below:

(a)  During the third full
year of the license period, minimum
royalties shall be $30,000.00;

(b)  During the 4th full year
of the license period, minimum
royalties shall be $40,000.00;

(c)  During the fifth full
year and each year thereafter,
minimum royalties shall be
$50,000.00

In the event Curt does not pay
Cattz the minimum royalty specified
hereinabove, then Cattz and Cattau
shall have the right to grant a
license to manufacture, market, and
sell the license product to any
third party or to terminate this
licensing agreement upon ninety
(90) days notice to Curt. . . .

(*Id.* at ¶ 7).

Cattz commenced the instant action on May 4, 2005, for

breach of contract.  Cattz alleges that Curt breached several of

its contractual obligations, including its obligation to use best

efforts to promote and sell the licensed products and its

obligation to pay Cattz royalties.  Cattz seeks $70,000 or more

due in royalties for 2003 and 2004, future royalties, and

consequential damages for lost opportunity.  Curt filed the

-3-

instant motion on March 31, 2006, seeking partial summary judgment on plaintiff's claims for $70,000 or more in royalties for 2003 and 2004 and for future damages, including future royalties, additional royalties, and lost opportunity.

### Standard

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harder v. ACANDS*, Inc., 179 F.3d 609, 611 (8th Cir.1999). Once a party has filed a motion for summary judgment, the burden shifts to the non-moving party to "go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Planned Parenthood of Minnesota/South Dakota v. Rounds,* 372 F.3d 969, 972 (8th Cir. 2004) (quoting *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir.1992)). A dispute is genuine if the evidence is such that a reasonable trier of fact could return a decision in favor of the party opposing summary judgment. *Id.* In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003). Where the unresolved issues are primarily legal rather than factual, summary judgment is

-4-

particularly appropriate.  *Koehn v. Indian Hills Community College,* 371 F.3d 394, 396 (8th Cir. 2004).

## DISCUSSION

### A.   Minimum Royalties

In its complaint, Cattz seeks, *inter alia*, $70,000 in "minimum royalties" for the years 2003 and 2004 and an unspecified amount of future "minimum royalties," which it claims are due under paragraph 7 of the Licensing Agreement.  Curt argues that Cattz is not entitled to either past or future minimum royalty payments because paragraph 7 of the Agreement only grants Cattz the right to either terminate the exclusivity of the license or terminate the Agreement altogether.  In response, Cattz contends that summary judgment is inappropriate because the Agreement's provisions relating to the payment of royalties are ambiguous.  This issue, therefore, boils down to one of contract interpretation.

A contract must be construed as a whole, and if possible, effect must be given to every part thereof.  *Rains v. Becton, Dickinson & Co.*, 523 N.W.2d 506, 509 (Neb. 1994).[1]   In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.  *Reisig v.*

------

[1] In a diversity case, a contract must be construed according to state law.  *Orion Fin. Corp. of South Dakota v. American Foods Group, Inc.*, 281 F.3d 733, 738 (8th Cir. 2002).

-5-

*Allstate Ins. Co.*, 645 N.W.2d 544, 550 (Neb. 2002).  A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.  *Thompson v. Valley Corp.*, 528 N.W.2d 352, 356 (Neb. Ct. App. 1995).  The determination as to whether an ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that parties have suggested opposing interpretations does not necessarily compel the conclusion that the instrument is ambiguous.  *Smeal Fire Apparatus Co. v. Kreikemeier*, 2004 WL 2434884 at *4 (Neb. Ct. App. Nov. 2, 2004).  A contract which is written in clear and unambiguous language is not subject to interpretation or construction; rather the intent of the parties must be determined from the contents of the contract, and the contract must be enforced according to its terms.  *Rains*, 523 N.W.2d at 509.  When it is established that a contract is ambiguous, the meaning of its terms is a matter of fact to be determined in the same manner as other questions of fact that preclude summary judgment. *Jeffrey Lake Dev., Inc. v. Central Nebraska Public Power and Irrigation Dist.*, 2004 WL 2216494 at *9 (Neb. Ct. App. Oct 05, 2004); *In re Trust Created by Ziegman,* 2003 WL 21278512 at *3 (Neb. Ct. App. Jun 03, 2003).

There are three paragraphs in the Agreement pertaining to the payment of royalties:  paragraph 4, which provides that Curt shall pay Cattz a royalty of 6% on all net sales of all licensed products sold by or for Curt during the term of the agreement; paragraph 5, which provides that the royalty payments under paragraph 4 are to be paid quarterly; and paragraph 7, which gives Cattz the right to terminate the exclusivity of Curt's license or terminate the Agreement altogether in the event that Curt fails to satisfy the royalty minimums delineated in paragraph 7.  Cattz argues these provisions are ambiguous because they could be construed to mean that Curt was required to pay those minimum royalties set forth in paragraph 7 plus an additional 6% in royalties due under paragraph 4.

In construing these paragraphs as a whole, the Court finds that the Agreement is unambiguous and that the clear, plain, and ordinary meaning of the royalty payment provisions mean that Curt was to pay Cattz a 6% royalty on all net sales, that the royalty was to be paid quarterly, and that in the event the yearly royalty payments under paragraph 4 failed to meet those minimums delineated in paragraph 7 that Cattz had the right to terminate the exclusivity of Curt's license or terminate the Agreement altogether.  Several factors support this conclusion. First, there is no language in the Agreement providing for the mandatory payment of minimum royalties; paragraph 7 merely

-7-

provides what the "minimum royalties shall be;" it does not state that Curt *shall pay* Cattz the minimum royalties set forth in that paragraph.  Second, there is no provision in the Agreement that addresses when these alleged annual minimum royalty payments would be due.  Paragraph 5, which is the only paragraph pertaining to the payment of royalties under the Agreement, contains specific provisions requiring Curt to submit a quarterly written report of all licensed products sold  "accompanied by payment of the royalty *due under paragraph 4* hereof."  Thus, the only royalty payment addressed in the only provision in the contract addressing royalty payments is the payment of royalties under paragraph 4.  If minimum royalties were to be paid annually under the Agreement as Cattz claims, one would expect there to be a provision in the Agreement, similar to paragraph 4, detailing when these amounts in annual minimum royalties were to be paid.  Third, the Court finds the context in which the minimum royalties are discussed significant.  Minimum royalties are only addressed once in the entire Agreement and are done so juxtaposed between paragraphs addressing the duration and termination of the Agreement.  Had Cattz bargained for the mandatory payment of annual minimum royalties, it is unlikely that the only place in the Agreement where they would have been referenced is in the context of the duration and termination of the Agreement.  For these reasons, the Court concludes, as a matter of law, that

-8-

Cattz is not entitled the minimum royalties discussed in paragraph 7 of the Agreement.

**B.    Termination of the Agreement and Future Damages**

Curt also contends that Cattz is not entitled to any future royalties or any other future damages because Cattz exercised its right to terminate the Agreement under paragraph 7, thereby terminating Curt's obligation to perform and Cattz's right to future damages.  To support this contention Curt relies on the following excerpt from Cattau's deposition testimony:

Q.   Okay. Have you ever terminated the contract?

A.   Yes.

Q.   When did you terminate the contract?

A.   Approximately six months – five, six months ago.

Q.   How did you terminate it five or six months ago?

A.   Sent CURT a letter.

Q.   Did you send that, or did you have your attorney send that?

A.   I had my attorney send it.

                    * * *

Q.   Now, you say that sometime about six months ago your company terminated the contract with CURT Manufacturing?

A.   Yes.

Q.   Okay.  You think that was in a letter?

A.    Yes.

Q.    Okay.  You think that was in a letter?

A.    Yes.

Q.    Did the letter say just that, the contract is terminated?

A.    Yes.

Q.    Paragraph 10B of the contract says that you're asking for future royalties which are not immediately due and fully payable in, at least, the minimum sums required by the agreement since it has been breached.  What do you base the claim on that future royalties are immediately due and payable?

A.    That the contract was in effect and we should get our money.

Q.    Okay.  I thought you told me just now that you had terminated the contract five months ago.  Did I misunderstand?  Let me rephrase the question.  You told me just now, and you told me earlier in your deposition, that you had terminated this contract five months ago; is that correct?  Is that what you told me?

A.    Yes, terminated the contract.

(Cattau Depo. 220:24-221:10; 245:9-246:10).  In response, Cattz's counsel argues that Mr. Cattau was confused at his deposition and that the letter dated February 16, 2005, exchanged between Cattz and Curt, did not terminate the Agreement, but rather notified Cattz that he was in breach and gave him an opportunity to cure.

Having reviewed the February 16, 2005, letter as well as the relevant portions of Mr. Cattau's deposition testimony,

-10-

the Court finds that there are genuine issues of fact as to whether the Agreement has been terminated.  The Court, therefore, will deny Curt's motion for partial summary judgment on Cattz's claim for future damages.

> **C.   Acceleration and Future Royalty Payments**

Alternatively, Curt argues that Cattz cannot recover future royalties because there is no acceleration clause in the Agreement that allows Cattz to accelerate the payment of future royalty installments.  In other words, Curt argues that, absent termination, Cattz, in the event it is able to prove that Curt breached the Agreement, is only entitled to recover royalties due through the date of trial because there has been no breach of the future royalty installments due under the Agreement.  Because resolution of this issue ultimately turns on whether the Agreement has been terminated and because there are questions of fact as to whether the Agreement has been terminated, Curt's motion for partial summary judgment on this theory will be denied.  Accordingly,

IT IS ORDERED that defendant's motion for partial summary judgment (Filing No. 39) is granted as to the issue of minimum royalties and denied as to the termination of the

agreement and future damages and the acceleration and future
royalty payments.

DATED this 8th day of May, 2006.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court